**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

**R. SCOTT APPLING,**
      **Appellant,**

     **v.**

**LAMAR, ARCHER & COFRIN, LLP,**
      **Appellee.**

**CIVIL ACTION NO.**

**3:15-CV-031**

On Appeal from the United States Bankruptcy Court
For the Middle District of Georgia – Athens Division
Chapter 7 Proceeding No. 13-30083-JPS
Adversary Proceeding No. 13-3042

---

**BRIEF OF APPELLANT**

Daniel L. Wilder
Attorney for Appellant R. Scott Appling
Emmett L. Goodman, Jr. LLC
544 Mulberry Street, Suite 800
Macon, Georgia 31201
Tel. (478) 745-5415
Fax (478) 746-8655
dwilder@goodmanlaw.org

## **TABLE OF CONTENTS**

Table of Authorities                                             ii

Statement of Appellate Jurisdiction                             1

Statement of the Issues on Appeal                              1

Standard of Review                                              2

Statement of the Case                                          2

      Procedural History                               2

      Statement of Facts                               3

Argument                                                       5

Conclusion                                                     22

Certificate of Service                                         24

## <u>**TABLE OF AUTHORITIES**</u>

*Caselaw*

<u>Allison v. Roberts</u>, 960 F.2d 481 (5th Cir. 1992)      6

<u>In re Anderson</u>, 181 B.R. 943, 949 (Bankr. D. Minn. 1995)      13

<u>In re Bandi</u>, 683 F.3d 671 (5th Cir. 2012)      11

<u>In re Bucciarelli</u>, 429 B.R. 372 (Bankr. N.D.Ga. 2010) (Drake, J.)      9

<u>Bullock v. Bankchampaign</u>, 133 S.Ct. 1754, 81 USLW 4292 (2013)      14

<u>In re Burgess</u>, 955 F.2d 134, 137 (1st Cir. 1992)      14

<u>In re Calloway</u>, 2006 WL 6589022, (Bankr. N.D.Ga. 2006)      11

<u>In re Chase</u>, 372 BR 133 (Bankr. S.D.NY 2007)      17

<u>In re Delong</u>, 2014 WL 4059790 (Bankr. N.D.Ga. 2014) (Sacca, J.).      16, 21

<u>In re Englander</u>, 95 F.3d 1028, 1030 (11th Cir. 1996)      2

<u>Field v. Mans</u>, 516 US 59, 61, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995)      15-17

<u>In re Goodrich</u>, 999 F.2d. 22, 25 (1st Cir. 1993)      20

<u>In re Greenidge</u>, 75 B.R. 245 (Bankr. M.D.Ga. 1987) (Laney, J.)      21

<u>Grogan v. Garner</u>, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)      5

<u>Hungbank v. Kim</u>, 62 F.3d 1511 (9th Cir. 1995)      19

In <u>In re Husman</u>, 2013 WL 5134539 (Bankr. W.D.Pa. 2013)      17

<u>Johannessen v. Johannessen</u>, 76 F.3d 347, 350 (11th Cir. 1996)      6

<u>In re Kaspar</u>, 125 F.3d 1358, 1361 (10th Cir. 1997)      11

<u>In re Kim</u>, 163 B.R. 157, 161 (9th Cir. B.A.P. 1994)      19

<u>Lykes Bros. Inc, v. US Army Corps of Engineers</u>, 64 F.3d 630, 634 (11th Cir. 1995)  2

<u>Lycan v. Walters</u>, 904 F.Supp 884, 887 (S.D. Ind. 1995)      13

<u>Matter of McFarland</u>, 84 F.3d 943, 947 (7th Cir. 1996)                    20

<u>Palmacci v. Umpierrez</u>, 121 F.3d 781, 787 (1st Cir. 1997)               14, 15

<u>In re Patterson</u>, 967 F.2d 505, 508 (11th Cir. 1992)                      2

<u>In re St. Laurent</u>, 991 F.2d 672, 676 (11th Cir. 1993)                   13

<u>Schweig v. Hunter (In re Hunter),</u> 780 F.2d 1577, 1579 (11th Cir.1986)    6, 13

<u>In re Sharpe</u>, 351 B.R. 409, (Bankr. N.D.Tex. 2006)                       10

<u>In re Turner,</u> 12 B.R. 497, 501 (Bankr. N.D.Ga. 1981)                     13

<u>In re Vann,</u> 67 F.3d 277, 283 (11th Cir. 1995)                          17

<u>Wolf v. Campbell</u>, 159 F.3d 963, 966-967 (6th Cir. 1998)               19-20

<u>In re Wube</u>, 2013 WL 1137108, Adv. No. 12-10046 (Bankr. D.D.C. 03/19/13)  12

*Statutes and Rules*

11 U.S.C. § 523                                                           *passim*

11 U.S.C § 523(a)(2)(A)                                                   *passim*

11 U.S.C. § 523(a)(2)(B)                                                     19

11 U.S.C. § 523(a)(4)                                                        14

28 U.S.C. § 1334                                                             1

28 U.S.C. § 158(a)(1)                                                        1

Federal Rule of Bankruptcy Procedure 8002                                   1

Federal Rule of Evidence 1003                                               9

Restatement (Second) of Torts § 545a, Comment b (1978)                      15

**STATEMENT OF APPELLATE JURISDICTION**

This appeal arises out of an adversary proceeding filed by Appellee Lamar, Archer & Cofrin, LLP. ("Lamar") against Appellant Debtor R. Scott Appling ("Appling") objecting to the dischargeability of Debtor's obligation to Lamar under 11 U.S.C. § 523.  This appeal is from the final decision of the bankruptcy court entering judgment in favor of Lamar and against Appling on March 10, 2015. (R3-478)[1] This court has jurisdiction pursuant to 28 U.S.C. § 1334 and appellate jurisdiction pursuant to 28 U.S.C. § 158(a)(1).  Notice of Appeal was timely filed in the Bankruptcy Court on March 23, 2015 pursuant to Federal Rule of Bankruptcy Procedure 8002. (R3-499).

**STATEMENT OF THE ISSUES ON APPEAL**

I.

WHETHER THE BANKRUPTCY COURT ERRED IN DETERMINING THAT LAMAR, ARCHER & COFRIN, LLP HAS A NON-DISCHARGEABLE CLAIM AGAINST R. SCOTT APPLING.

II.

WHETHER THE BANKRUPTCY COURT ERRED IN RULING THAT APPLING'S ALLEGED REPRESENTATION WAS NOT AN "ORAL STATEMENT RESPECTING THE DEBTOR'S FINANCIAL CONDITION" UNDER 11 U.S.C § 523(a)(2)(A).

III.

WHETHER THE BANKRUPTCY COURT FAILED TO APPLY THE HEIGHTENED STANDARDS REQUIRED UNDER 11 U.S.C. §523(a)(2)(A) AND RELEVANT CASELAW FOR STATEMENTS CONCERNING FUTURE ACTS AND OMISSIONS.

---

[1] The record from the bankruptcy court in this case is split across Docket Nos. 3, 5, 6, and 7.  Docket 3 contains the majority of the case file, including all pre-trial documents, the decision, and trial transcripts while Docket Nos. 5-7 consist entirely of trial exhibits. For ease of reference, all citations to the record will be in the form R3 or R5 followed by a hyphen and a page number.

IV.

WHETHER THE BANKRUPTCY COURT ERRED IN ITS DETERMINATION THAT LAMAR, ARCHER & COFRIN, LLP PROVED RELIANCE MUCH LESS JUSTIFIABLE RELIANCE ON ANY REPRESENTATION OF R. SCOTT APPLING.

V.

WHETHER THE BANKRUPTCY COURT ERRED IN DETERMINING DAMAGES AS BEING THE WHOLE AMOUNT OF LAMAR, ARCHER & COFRIN'S CLAIM RATHER THAN MEASURING DAMAGES BASED ON THE ALLEGED MISREPRESENTATION ITSELF.

## STANDARD OF REVIEW

In an adversary proceeding, the Bankruptcy Court sits as a finder of fact and rules on questions of law. Conclusions of law regarding interpretation and application of the Bankruptcy Code are subject to *de novo* review by this Court. In re Englander, 95 F.3d 1028, 1030 (11th Cir. 1996); In re Patterson, 967 F.2d 505, 508 (11th Cir. 1992). Findings of fact are subject to a "clearly erroneous" standard of review. Englander, supra. A factual finding is clearly erroneous if the appellate court "after reviewing all of the evidence [is] left with the definite and firm conviction that a mistake has been committed." Lykes Bros. Inc, v. US Army Corps of Engineers, 64 F.3d 630, 634 (11th Cir. 1995).

## STATEMENT OF THE CASE

A. Procedural History

After Debtor/Appellant R Scott Appling filed his personal bankruptcy petition, Appellee Lamar, Archer & Cofrin, LLP filed an action to declare Appling's debt to it non-dischargeable under 11 U.S.C. § 523(a)(2)(A). (R3-2). Prior to filing his Answer, Appling filed a Motion to Dismiss the adversary proceeding under F.R.C.P. 12(b)(6) for failure to state a claim based on many of the allegations that now come to this court as appellate issues. (R3-

82).  Following denial of the Motion to Dismiss, the parties conducted discovery and the

matter came on for trial before the Bankruptcy Court on September 18 and 23, 2014. (R3-

133).  Appling submitted a post-trial brief on October 13, 2014. (R3-148).  The transcript was

prepared at the request of Lamar, and Lamar submitted a post-trial brief on January 21, 2015.

(R3-470).  The Bankruptcy Court entered its Memorandum Opinion and Judgment declaring

the debt to be non-dischargeable on March 10, 2015. (R3-478).  Appeal was taken to this

Court on March 23, 2015. (R3-499).

B. Statement of Facts.

On or about June 4, 2004, Appling purchased a company in Franklin Springs, Georgia

that manufactured seating components at a price of over two million dollars. (R5-18, 20).  The

purchase was made possible by a loan from the Small Business Administration, a secondary loan

to an entity related to the seller, a third loan provided by an accountant entity, and a personal cash

infusion. (R5-25, 27-29).  Shortly after taking control, Appling discovered major accounting

discrepancies in the books of the company and fraudulent corporate tax returns. (R5-32-34).  The

business was actually worth somewhere between $270,000 and $630,000. (R3-298-299; R6-2).

The books were cooked, and Appling wanted his money back.

Appling turned to a local attorney, Walter Gordon, hereinafter "Gordon", for help. (R3-

289-290).  Gordon referred him to Lamar. Id.  Appling hired Lamar who in turn associated

Gordon as local counsel. Id.  Lamar represented Appling for about a year from late June 2004 to

summer 2005.  From June 2004 through March 3, 2005, Lamar billed $166,692.04 for his

services; Appling paid $99,981.47. (R5-40).  Appling was upset about the enormous amount of

the fees. (R3-292, 293, 294).  In March 2005, the matter was almost ready for trial. (R3-315,

316).  Lamar was concerned about fees owed and unpaid and wrote Appling on March 9, 2005

that Lamar would not go forward towards trial without being paid. (R3-97-99, 341).  At a March 18, 2005 meeting attended by Appling, Lamar, and Gordon, Appling advised that, although he could make no promise, there was an amended tax return based on loss carrybacks which was not completed yet but which his accountant, Mike Strickland, told him by telephone might yield a refund of as much as $100,000. (R3-304-306).  If Appling got all of the money that he was hoping for, there should be enough to cover the bill. (R3-308). Lamar remembered the meeting differently and stated that Appling advised him that the tax return was completed and Appling was just waiting on the money. (R3-216).  Gordon testified that the tax return had not been completed and there was no specific amount of money. (R3-168). Lamar alleges a series of inconsistent and changing misrepresentations emerging from that meeting. See R3-471 for a list of the many misrepresentations argued post-trial and contrast that with the complaint.

In any event, Lamar continued the work but within two months forced an unsatisfactory settlement upon Appling due to Appling's not having enough funds to proceed with trial. (R3-350 *ff*.)  Lamar's work was completed in early summer 2005. (R3-356).  Upon Appling's receipt of the anticipated tax refund which ultimately amounted to $59,851 rather than $100,000, Appling immediately called a meeting with Lamar in November 2005. (R3-319, 322).  Attending the meeting were Lamar, Appling, and Appling's wife Connie. (R3-320).  Gordon was not present. (R3-168).  Both Applings testified that the November meeting was set up to review the tax refund and the billing situation. (R3-363, 423).  Lamar first alleged that Appling already had spent the tax refund by the time of the November meeting but stated at trial that the Applings intentionally did not tell him about the refund at that meeting. (R3-217, 220).  Notes made by Connie Appling at the time of the meeting show otherwise. (R5-132-135).  Lamar alleged misrepresentations of omission from that meeting.

Following the March meeting, Lamar billed another $22,804.69 excluding any finance changes but was paid $35,911.00, including $10,000 from the retainer. (R5-40). That works out to a net reduction in fees, excluding finance charges, from the time of the alleged misrepresentation to the conclusion of the representation of Appling by Lamar. From July 2005, Lamar billed only $227.27 in additional fees as a result of a single telephone call with Appling in March 2006. (R5-40).

Lamar eventually sued Appling in the Superior Court of Hart County, Georgia, and won a judgment for attorney's fees in the amount of $104,179.60, a sum that included a significant amount of pre-judgment interest. (R5-115). Appling and his wife filed bankruptcy. (R3-168). Lamar commenced the adversary proceeding to declare its entire debt non-dischargeable, asserting that Appling made misrepresentations about the tax refund at the March and November 2005 meetings. Lamar asserts that it justifiably relied on the misrepresentations and continued to represent Appling, foregoing collection of its fees. Appling asserts that he made no misrepresentations, that representations of the type Lamar alleges are non-actionable under applicable law, that Lamar did not rely on anything Appling said much less justifiably relied, and that Lamar has not proven any damages as a matter of law.

## ARGUMENT AND CITATION OF AUTHORITY

### I.

### WHETHER THE BANKRUPTCY COURT ERRED IN DETERMINING THAT LAMAR, ARCHER & COFRIN, LLP HAS A NON-DISCHARGEABLE CLAIM AGAINST R. SCOTT APPLING.

Lamar objects to the discharge of its debt for attorney's fees and proceeds on a false representation theory under 11 U.S.C. § 523(a)(2)(A). Lamar has the burden of proof by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d

755 (1991).  The general rule is that exceptions to discharge are to be narrowly construed in favor of the debtor.  <u>Schweig v. Hunter (In re Hunter),</u> 780 F.2d 1577, 1579 (11th Cir.1986). The debtor must be guilty of positive fraud not simply fraud by implication. <u>Id</u>.  The standard is further heightened when the alleged misrepresentation concerns the promise of a future act as alleged here, and a plaintiff must then prove that the debtor "had no intention of performing as promised." <u>Allison v. Roberts</u>, 960 F.2d 481 (5th Cir. 1992).

> The elements of a claim under 11 U.S.C. § 523(a)(2)(A) are: the debtor made a false statement with the purpose and intention of deceiving the creditor; the creditor relied on such false statement; the creditor's reliance on this false statement was justifiably founded; and the creditor sustained damage as a result of this false statement.

<u>Johannessen v. Johannessen</u>, 76 F.3d 347, 350 (11th Cir. 1996).  Lamar must prove each and every element in order to prevail.

Beginning with the elements, Lamar must first prove that a false representation was made.  At trial, Lamar alleged that, in March 2005, Defendant Appling affirmatively stated that was entitled to a $100,000 tax refund and would pay all of Plaintiff's current and future billing with that money.  Three witnesses testified to that point.  Mr. Lamar, a named partner of Lamar, Archer & Cofrin, LLP, testified that Appling said that the tax return was completed and he was just waiting on the money. (R3-216).  Mr. Gordon, co-counsel to Lamar, testified that Appling stated that the tax return was not completed yet, and Gordon did not remember any set number for the amount of the refund. (R3-168).  Appling testified that he made no promise but did state that the tax refund was not completed yet and, if he got all of the money that he was hoping for, there should be enough to cover the bill. (R3-304, 306, 308).  The record reflects the actual phraseology used by each.

Gordon and Appling agree on the point that no tax return was completed to give a number certain in March 2005.  This undercuts Lamar's assertions to the contrary.  Gordon

testified for Lamar and had no reason to favor Appling as demonstrated by Gordon's recounting of an altercation, or at least angry encounter, with Appling at Gordon's own office in 2012. (R3-194, 195). The tax return evidence along with testimony of Appling establishes that the refund was not finalized until summer of 2005 with the refund being received in October 2005 by Appling in the amount of approximately $59,851 rather than the $100,000 originally believed. (R5-109-114).

Aside from direct testimony of the witnesses, Lamar was unable to produce any documentary evidence at all to support its version of the misrepresentation. No one in the law firm, including Mr. Lamar, made any contemporaneous notes, sent any confirming letters, or made any billing reference at all to the alleged misrepresentation. (R3-244,245). In fact, the first mention of a tax refund in Lamar's written record occurs in a letter sent to Appling over a year later in summer 2006 which began Lamar's collection process. (R5-105).

The Bankruptcy Court issued a split decision on this point. The Bankruptcy Court first found that Lamar failed to prove that Appling represented that an amended tax return had been prepared at the March meeting, citing a conflicted record and crediting Gordon's testimony. (R3-487). However, it then found that Appling did misrepresent that the amount of the refund would be $100,000, stating that Appling essentially must have known that the high number was wrong and that his accountant would not have told him such a thing. (R3-487). This reasoning is surprising for two reasons. First, Gordon, whom the Bankruptcy Court credited on the first point, testified that the number was not set in stone. (R3-168). Second, the Bankruptcy Court commented during closing argument that the Court itself would not necessarily know what number would be correct and that it was generally reasonable to rely on an accountant. (R3-440, 441). In its opinion, however, the Bankruptcy Court openly

7

speculates what the accountant was likely to have told Appling about prevailing tax rates and amounts of the likely refund without any evidence of record from the accountant or regarding specific applicable tax rates. (R3-478).  That speculation was not necessary as Lamar actually deposed Appling's accountant, Mike Strickland, during the course of discovery but chose not to call Strickland or enter his deposition at trial. (R3-227).  The evidence is not there to support a misrepresentation; the Bankruptcy Court's assumptions as to tax rates and the plausibility inferences drawn therefrom is not evidence. (R3-479).  It was error for the Bankruptcy Court to rely on same.  The accountant could have made a miscalculation; Appling was entitled to rely on what he said.  It also seems inconsistent for the Bankruptcy Court to find that Appling made no misrepresentation about completion of the tax return but did misrepresent the amount of refund on an uncompleted return.  Lamar has failed to show any misrepresentation at the March 18, 2005 meeting by a preponderance of the evidence.

Lamar further alleges a misrepresentation by Appling in November 2005 at a meeting at Lamar's office in Atlanta. Originally, the complaint characterized this representation as Appling "had no intent to perform because he had already received and spent the refund." (R3-142).  At trial, this allegation was abandoned.  Lamar subsequently attempted to show that Appling did not reveal that he had the tax refund money in his possession at that time and committed a misrepresentation of omission. (R3-217,220).  Since Gordon acknowledged that he was not part of the November meeting, Lamar had only its own testimony in its favor. (R3-168).  Direct testimony to the contrary was presented by both Appling and his wife, Connie Appling, both of whom attended the meeting. (R3-363,423).  Both Applings testified that Appling himself set up the meeting to discuss the tax refund and bill.  Id.  Connie Appling made contemporaneous notes at and shortly after the meeting that were admitted into

evidence without objection. (R5-132-135). The notes reflect a conversation about the tax refund that contradicts Lamar's testimony and confirms the Applings' testimony.  Again, Lamar has no documentary evidence of any kind to shore up its testimony. (R3-251, 252).

The Bankruptcy Court however found that Lamar has proven that Appling falsely represented at the November 2005 meeting that he had not yet received the tax refund. (R3-491).  The Bankruptcy Court based its finding on the demeanor of witnesses and documents produced. Id.  Specifically, the Bankruptcy Court stated that it considered the introduction of a copy of Appling's notes rather than the original to be "suspicious." Id.  Pursuant to Federal Rule of Evidence 1003, "A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate."  Here, the notes were admitted without any objection as to authenticity or any request by Lamar that Appling produce the original which was available. (R3-421).  No genuineness question was raised at trial.  Connie Appling even testified that the notes were in her own handwriting. Id.  The Bankruptcy Court thus erred in finding fault in the submission of a copy where the authenticity was never questioned by the opposing party at trial.  This error prejudiced Appling as it appears that the Bankruptcy Court used this "copy" argument to tip the scales in favor of Lamar.

Even so, the Bankruptcy Court questioned at closing argument whether an omission could even be classified as a misrepresentation as a matter of law. (R3-446).  While the case law does not rule out the possibility that silence as to a material fact may be actionable, that would be as a claim for false pretense rather than false representation. See In re Bucciarelli, 429 B.R. 372 (Bankr. N.D.Ga. 2010)(Drake, J.).  The case itself is instructive.  Bucciarelli was an adversary proceeding to recover attorney's fees by a divorce attorney.  The debtor paid

9

nothing but the original retainer fee.  The debtor admitted to a third party that he never had any intent to pay the fees; the third party testified against him at trial. <u>Bucciarelli</u>, supra, at 376. Finding that the third party had no motive for bias and testified in favor of the debtor previously, the Court ruled that the debt was non-dischargeable.  <u>Id</u>. The admission against interest did him in.  The arguable third-party witness here, Gordon, although not as removed from the proceedings as the third-party witness in <u>Bucciarelli</u> did *not* confirm Mr. Lamar's allegations.   Rather Gordon's testimony bolstered that of Appling against Gordon's and Lamar's interest.  This is close to an admission against interest by Lamar.  Lamar failed to prove a false representation.  His claim does not get beyond the first element necessary to prove his case.

## II.

### WHETHER THE BANKRUPTCY COURT ERRED IN RULING THAT APPLING'S ALLEGED REPRESENTATION WAS NOT AN "ORAL STATEMENT RESPECTING THE DEBTOR'S FINANCIAL CONDITION" UNDER 11 U.S.C § 523(a)(2)(A).

In the instant case, the original and basic analysis of the representations alleged by Lamar is that Appling would pay attorney fees to Lamar in the future from an anticipated tax refund. (R3-16).  Even if they were made, these representations are insufficient to establish liability as a matter of law.

Under the text of 11 U.S.C. § 523(a)(2)(A), a representation that is an "oral statement respecting the debtor's or an insider's financial condition" is not actionable.  There is no dispute here that all of the alleged representations about which Lamar complains were oral rather than written so the issue is whether they were respecting the debtor's financial condition.  Lamar was generally aware of Appling's overall financial condition due to the work it was doing on his case involving a failed business venture. (R3-13, 14).  Lamar even

procured a financial analyst at Appling's expense to determine his financial condition and produce a report. (R7).  The alleged representation relates to financial data provided to Lamar – the presence of a substantial tax refund from which future attorney's fees could possibly be paid.

"A statement that a debtor will receive a substantial amount of income from which a loan would be repaid is unequivocally a statement concerning [the debtor's] financial condition." In re Calloway, 2006 WL 6589022, (Bankr. N.D.Ga. 2006).  See also In re Sharpe, 351 B.R. 409, (Bankr. N.D.Tex. 2006)(finding that the debtor's oral statement to the plaintiff that he had money stashed away that he would use to repay the plaintiff was a statement respecting the debtor's financial condition).  "A creditor who forsakes that protection [of a writing], abandoning caution and sound business practices in the name of convenience, may find itself without protection." In re Kaspar, 125 F.3d 1358, 1361 (10th Cir. 1997).  As in Sharpe and Calloway, this debtor's alleged oral representation, even if false, is not actionable under 11 U.S.C. § 523(a)(2)(A).

Lamar contended and the Bankruptcy Court found that Appling's reliance on Calloway and Sharpe is misplaced and represents a narrow view that should not be applied here.  Lamar would prefer that the Court follow In re Bandi, 683 F.3d 671 (5th Cir. 2012) for its holding, based on its review of legislative history, that a representation about having a particular asset is not necessarily a statement about a financial condition unless it also includes a broader statement about assets and liabilities.  Lamar would then require a somewhat lengthy oral statement akin to a balance sheet analysis for a representation to be deemed non-actionable.  At least one court has publicly disagreed with Bandi's main premise

and analysis. See, <u>In re Wube</u>, 2013 WL 1137108, Adv. No. 12-10046 (Bankr. D.D.C. 03/19/13).

In <u>Wube</u>, the misrepresentations involved the debtor's ownership of certain nightclubs and his control of revenues from those clubs. 2013 WL 1137108 at 2.  The creditor was relying on those representations for repayment of a loan. <u>Id</u>. The <u>Wube</u> court found,

> The critical inquiry is the purpose of the statement.  This is not a case of the debtor misrepresenting the character of the asset being purchased (e.g., a misrepresentation that the asset is unencumbered).  . . . Here, in contrast, the statement *was* made as an indication of financial ability to pay.

2013 WL 1137108 at *3, (Emphasis in original).  The <u>Wube</u> court found that even under the <u>Bandi</u> interpretation, "the alleged misrepresentations concern Wube's financial worth and ability to pay," and were not covered under 11 U.S.C. § 523(a)(2)(A).  Looking to <u>Wube</u> for guidance in this case, the alleged representation is a statement about ability to pay rather than the mere existence of an asset.  Lamar represented Appling in dealing with business problems, obtained relief from the Superior Court on Appling's behalf that allowed Appling to continue business without making certain loan payments, and was threatening collection or withdrawal from representation due to non-payment by Appling. The alleged misrepresentation in this case was about how Appling could repay the debt already owed, i.e. ability to pay.  Just as in <u>Wube</u>, the critical inquiry is purpose - the misrepresentation in this case necessarily goes to financial condition, deeming it non-actionable.

In reviewing these arguments, the Bankruptcy Court recognized a split of authority on the issue and noted that there was no Eleventh Circuit precedent. (R3-138).  The Bankruptcy Court held that it would choose a broad approach rather than the strict approach taken by those cases.  Appling contends that decision was erroneous under the caselaw above.  Appling should have never been forced to defend this suit through trial.

12

III.

WHETHER THE BANKRUPTCY COURT FAILED TO APPLY THE HEIGHTENED
STANDARDS REQUIRED UNDER 11 U.S.C. §523(a)(2)(A) AND RELEVANT
CASELAW FOR STATEMENTS CONCERNING FUTURE ACTS AND OMISSIONS.

Under 11 U.S.C. § 523(a)(2)(A), a discharge may not be granted on account of money, property, services, or credit "to the extent obtained by – (A) false pretenses, a false representation, or actual fraud, *other than a statement respecting the debtor's or an insider's financial condition*." (emphasis supplied).   To prevail on a claim under 11 U. S. C. § 523(a)(2)(A), Plaintiff must prove:

(1) The debtor made a false representation of a past or current material fact;

(2) With the intent to deceive the creditor;

(3) The creditor justifiably relied upon the representation;

(4) The creditor sustained loss as a proximate result of the representation.

See In re St. Laurent, 991 F.2d 672, 676 (11th Cir. 1993).  Only truly blameworthy conduct rather than technical fraud will suffice. See In re Anderson, 181 B.R. 943, 949 (Bank. D. Minn. 1995).

An actual, overt representation is the *sine qua non* of Section 523(a)(2)(A). In re Hunter, supra, 780 F.2d 1577, 1578 (11th Cir. 1986).  The representation must relate to a past or existing material fact. Lycan v. Walters, 904 F.Supp 884, 887 (S.D. Ind. 1995).  Generally fraud will not lie for future promises or facts except where, at the time of the promise, the creditor can show actual intent by the debtor not to perform the act. See, In re Turner, 12 B.R. 497, 501 (Bank. N.D.Ga. 1981).  Even then, a statement of future intention is not a misrepresentation if the intervening events or future facts turn out to be different than

anticipated. Palmacci v. Umpierrez, 121 F.3d 781, 787 (1st Cir. 1997). The mere subsequent failure to pay does not establish intent. In re Burgess, 955 F.2d 134, 137 (1st Cir. 1992).

At trial, Lamar wholly failed to address the heightened standard required for representations about future events. Instead, Lamar meandered through contentions that the Court should examine the totality of the circumstances basis of a statement allegedly now "in reckless disregard for the truth," citing Palmacci v. Umpierrez, 121 F.3d 781 (1st Cir. 1997). (R3-91). The reckless disregard aspect however now seems to have been foreclosed. In Bullock v. Bankchampaign, 133 S.Ct. 1754, 185 L.Ed.2d 922 (2013), the U.S. Supreme Court held that a higher scienter requirement than mere "objective recklessness" was required to prove defalcation under 11 U.S.C. § 523(a)(4). There must be proof of an intentional wrong. Bullock, 133 S.Ct. at 175. In any event, the alleged misrepresentation in Palmacci dealt with the non-occurrence of the immediate investment of $75,000.00 in debtor's own funds into a real estate transaction with the creditor. 121 F.3d 781, 788. The bankruptcy court actually ruled for the debtor, and the 1st Circuit affirmed that ruling discharging the debt. Yet this logic necessarily implicates a past event, and the alleged representation in this case is about the future.

Equity also favors this heightened standard for the instant case. Appling is alleged to have promised to pay a specific amount with a specific fund – the only fund he had as Lamar clearly knew from concurrent work on Appling's finances. Lamar has only his own testimony to support the claim and acknowledges that there are no contemporaneous writings at all that would support his version of the facts. (R3-244, 245, 251, 252). The writings are not there because he chose not to make them. There are no billing entries, file notes, letters to Appling, inquiries to the IRS, letters to Gordon, or anything document to support his views. Anyone

could make such an allegation. Id.  This is exactly the sort of allegation that deserves strict scrutiny.  The claim should not be established by the testimony of but one witness.

From Palmacci, Lamar implores the Court to take account of circumstantial statements, including Appling's knowledge of the financial condition of his business and the relative time periods. This is not enough to meet the heightened standard.

IV.

WHETHER THE BANKRUPTCY COURT ERRED IN ITS DETERMINATION THAT LAMAR, ARCHER & COFRIN, LLP PROVED RELIANCE MUCH LESS JUSTIFIABLE RELIANCE ON ANY REPRESENTATION OF R. SCOTT APPLING.

Lamar was unable to establish the element of reliance, much less justifiable reliance at trial.  "Justification [of the reliance] is a matter of the qualities and characteristics of the particular plaintiff and the circumstances of the particular case, rather than of the application of a community standard of conduct in all cases." Field v. Mans, 516 US 59, 61, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) (quoting Restatement (Second) of Torts § 545a, Comment b (1978)). A person is thus required to "use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." Id.

In this case, Lamar claims reliance only in that it kept working, did not cease representation of Appling, and forbore to collect on its outstanding balance of approximately $60,000 as of March 2005. (R3-216-217).  As shown at trial, neither the billing numbers nor the timeframe support this argument.  Beginning in March 2005, Lamar's billing records reflect charges of approximately $20,000, excluding finance charges, compared with approximately $25,000 in payments. (R5-40).  After November 2005, only a total of $227.00 was billed. Id.  Although the numbers can be calculated several ways, the overwhelming

feature is that Lamar received from Appling more than billed after the alleged misrepresentations in March 2015.  Further, billing records essentially ceased after substantial settlement of the case in early summer of 2005, somewhere between May and June of 2005.  The making of substantial payments does "not appear to be the sort of conduct of a person who is committing a fraud.  It appears to the Court that when the Debtor did get [his] money from the settlement [he] simply decided to pay other things which [he] considered more important." In re Delong, 2014 WL 4059790, Adv. Proc. No. 14-5004, (Bankr. N.D.Ga. 2014) (Sacca, J.).

Lamar did not know that the taxing authority would approve the tax return, the actual amount of the refund, or the timing of the payment of the refund.  Lamar apparently did not even take the opportunity to review the tax return itself, even though he testified that he thought it had already been prepared.  No document was drawn up to reflect any assignment of the funds from the tax return.  There is not even a single contemporaneous letter from Lamar to Appling confirming the alleged conversations about the tax return.  The lack of such a letter is in stark contrast to the March 9, 2005 letter demanding payment that was attached to the complaint as Exhibit B. (R3-48).  Essentially, Lamar had at best a promise to pay based on the hope of future income, indeterminate as to time and amount.  This is the same situation in which every other creditor of a bankrupt debtor finds himself.  To show reliance, Lamar had to ignore all that he already knew about Appling's situation.

Moving on to the idea of reliance being justifiable, Lamar himself testified that the law firm knew of Appling's financial problems during all relevant time periods. (R3-243,244).  This was shown through reports, such as those of Mr. Porter and Mr. Strickland, which were commissioned and sent to Lamar regarding the valuation of the underlying business on whose

behalf Lamar was conducting the litigation. (R6, R7).  There was even evidence in billing records showing that on March 1, 2005, and prior to any alleged misrepresentation, Lamar spoke with a bankruptcy attorney on Appling's behalf. (R5-72).  Ms. Phyllis Appling, Appling's mother, testified that that Lamar even asked her to pay the bill that same month. (R3-431).

Lamar's response to questions about reliance was oft-repeated, "He just believed his client." (R3-101).  This was insufficient to meet any reliance standard.  <u>Field v. Mans</u>, supra, requires a creditor to "use his senses" and make "a cursory examination or investigation." The Court should examine the "particular qualities and characteristics of the plaintiff and circumstances of the particular case." <u>In re Vann</u>, 67 F.3d 277, 283 (11th Cir. 1995).  Other courts have interpreted the <u>Mans</u> standard to require more than just belief.  In <u>In re Husman</u>, 2013 WL 5134539, Adv. Proc. No. 12-2462 (Bankr. W.D.Pa. 2013), the creditor filed an adversary to recover attorney's fees.  The debtor represented he owned real estate in Oklahoma that could be used to pay the fee. <u>Husman</u>, supra at 1.  The attorney investigated and contacted an Oklahoma title company but did not discover the falsity "due to the intricateness in crafting support for his claims." <u>Husman</u>, supra at 6 fn. 5.  That was justifiable reliance.  Even so the amount determined to be non-dischargeable was limited to extent to which obtained by false representation; $750 of the $11,000 debt was deemed to be non-dischargeable. See also <u>In re Chase</u>, 372 B.R. 133 (Bankr. S.D.NY 2007) (no justifiable reliance in adversary to recover attorney's fees where record shows attorney was on notice of poor financial state of debtor and clearly knew of a "threat to its fees both those earned in the past and those about to be earned.")[2]

---

[2] The <u>Chase</u> court goes on to say that if the debtor did intend to perform at the time but subsequently decided he could not or would not, the initial representation was not false when made.

The Bankruptcy Court in this case simply accepted Lamar's testimony and stated that his untrammeled and ill-considered belief carried the day as Lamar was not aware of any facts that would have led him to doubt. (R3-494).   That is not the record here; Lamar knew everything about Appling's financial condition and was clearly and unequivocally on notice. Appling submits that Lamar's faith without even cursory works was void.   The standard set forth in the caselaw above demands more than just simple belief.

V.

WHETHER THE BANKRUPTCY COURT ERRED IN DETERMINING DAMAGES AS BEING THE WHOLE AMOUNT OF LAMAR, ARCHER & COFRIN'S CLAIM RATHER THAN MEASURING DAMAGES BASED ON THE ALLEGED MISREPRESENTATION ITSELF.

Finally, Lamar's contention that the entire indebtedness, including the amount incurred prior to the alleged misrepresentation, is non-dischargeable is both illogical and legally incorrect.   Starting with the statute, 11 U.S.C. § 523(a)(2) specifically limits itself to money, services, and other items "to extent obtained by" fraud. (emphasis supplied).   Lamar must prove that it incurred loss due to the misrepresentations of Appling.

The facts on this point are not really in dispute.   Lamar alleges no misrepresentations prior to the March 18, 2005 meeting.   He alleges that the false representations beginning in March 2005 caused him to continue to work on Appling's case and to forebear from immediate collection of the debt owed by Appling. (R3-97,99).   As stated several times above, regardless of how the numbers are calculated, following that meeting, Appling spent more money in payments to Lamar than Lamar billed in new charges. See Part IV above. (R5-40).   Lamar billed only $227.27 after the November 2005 meeting. Id. At trial, Lamar provided no evidence whatsoever concerning the value of any lost collection remedies prior to

18

March 2006 when he began the collection process. (R5-105). Thus, there is no evidence of new, unpaid billing after March 2005 nor is there other evidence to support a loss of valuable collection remedies during the relevant timeframe.

Appling first brought this matter to the Bankruptcy Court's attention in its Motion to Dismiss, revisited that objection on oral Motion for Directed Verdict at the close of Lamar's evidence, and reiterated in closing argument and on post-trial brief. (R3-57-58, 110-111, 272, 458, 459,464, 151). The Bankruptcy Court initially denied Appling relief on the Motion to Dismiss. (R3-145-146). In its final decision, the Bankruptcy Court simply reiterated its findings and quoted from its prior ruling in the case. (R3-494-497).

The issue is the appropriate calculation of damages not whether damages are generally awardable. It is only on the peculiar facts of this case that the appropriate calculation yields no damages. A discussion of the relevant, often overlapping caselaw is in order. There is apparently a split among the circuits with no controlling precedent in the Eleventh Circuit. In Hungbank v. Kim, 62 F.3d 1511 (9th Cir. 1995), the Ninth Circuit affirmed the Bankruptcy Appellate Panel's decision that there was no *per se* "new money" requirement for an extension of credit. However, this was not the measure of damages. The Bankruptcy Appellate Panel held that the creditor must prove,

> [O]n top of the first six factors set forth above, that it incurred damage proximately resulting from the misrepresentation. Specifically, if the creditor demonstrates that it had valuable collection remedies at the time of the extension or renewal, that it did not exercise in reliance on the debtor's misrepresentation and that those remedies lost value during the renewal or extension period, the creditor has shown proximate damage to the extent that those remedies lost value.

In re Kim, 163 B.R. 157, 161 (9th Cir. B.A.P. 1994). Thus, on remand, the creditor was authorized damages only to the extent that its collection remedies lost value. In Wolf v.

19

Campbell, 159 F.3d 963, 966-967 (6th Cir. 1998), a divided Sixth Circuit acknowledged the Ninth Circuit ruling but took a different view based on policy reasons alone finding that "to hold otherwise would create a perverse incentive for insolvent debtors to lie to creditors to get them to forbear collection of past due indebtedness and would remove the primary legal incentive for fair dealing namely, nondischargeability in bankruptcy when a contract is induced by fraud. A borrower's incentive to act with integrity should not end once he becomes insolvent." Yet Campbell was a false financial statement case under 11 U.S.C. § 523(a)(2)B). There the whole refinance of the loan was based on the false earning statements and sheets provided by the debtor. The Sixth Circuit cited no other caselaw for its holding, and the result was not unanimous. The dissent found that mere forbearance which did not amount to a refinancing of the debt did not give rise to a non-dischargeable claim. Campbell, supra, at 969. Furthermore, the dissent would have found that "the only debt that results from forbearance which can be described as an extension of credit is the debt for interest for the period of forbearance." Id. at 968. The dissent further finds that a close reading of the caselaw shows that every case involved more than "mere forbearance" and an actual new extension of credit that ultimately caused new harm to the plaintiff. See, Id. at 968-969 distinguishing Matter of McFarland, 84 F.3d 943, 947 (7th Cir. 1996) and In re Goodrich, 999 F.2d. 22, 25 (1st Cir. 1993) both cases cited by the Bankruptcy Court in its opinions.

However, the facts are different here, and the Sixth Circuit's policy guidance falls flat when viewed through the lens of this particular case. Appling was always insolvent once he purchased the business for much more than it was worth. He did not become insolvent and then make a representation to cover that up. Further, Lamar knew about the monetary struggles the whole time; indeed Lamar was working on that very problem for Appling. See

<u>Chase</u>, supra.  Appling paid the bills anyway and continued to pay after the extension. (R5-40).  Again, the making of substantial payments post alleged misrepresentation does "not appear to be the sort of conduct of a person who is committing a fraud." <u>In re Delong</u>, supra, 2014 WL 4059790 (Bankr. N.D.Ga. 2014) (Sacca, J.).

The only damages that Lamar has alleged are forbearing to collect its debt – nothing more.  The documentary facts after trial now show that Appling's actual payments exceed his charges after the March 2005 alleged misrepresentation. (R5-40). Thus, the new billing entails no damages at all.  If there is a measure of damages for forbearing to collect on the debt, Lamar has not shown it.  There was no testimony about how Lamar would have collected the debt, what assets would have been available then but not later, or crucially what was the pecuniary loss due to the forbearance from collecting the debt from March 2005 to June 2006 when collection actually began. (R5-105).

The measure of damages in this case is clearly not the windfall of declaring that the whole debt is owed.  A bankruptcy case from this district is persuasive.  In <u>In re Greenidge</u>, 75 B.R. 245 (Bankr. M.D.Ga. 1987), while Judge Laney found that the whole debt *may* be deemed non-dischargeable based on the particular facts of the transaction, he held that the creditor there had not proven non-dischargeability as to the refinanced portion of the loan. 75 B.R. at 247.  That was a refinance rather than a mere forbearance.  The measure of damages was only the amount of new money advanced.  <u>Id</u>.  This is precisely the situation in this case.  Having shown that no net new value was extended by Lamar and that Lamar's prior existing debt was uncollectible both before and after any alleged false representation based on their own knowledge of Appling's financial position, Lamar can prove no damages.  Lamar did not

21

even attempt to do so at trial.  The Bankruptcy Court erred in deeming the entire debt non-dischargeable.  That windfall decision is completely at odds with the caselaw above.

## Conclusion

In this case, the testimony of one party witness, Mr. Lamar, whose law firm represents itself in this action, about two conversations that occurred ten years ago is arrayed against the testimony of four witnesses and a full documentary record in an attempt to make a debt that is at most a mere promise to pay with a hope and a prayer non-dischargeable in bankruptcy.  No misrepresentation occurred here either in March or November 2005.  Even if there were a misrepresentation, it was an oral statement respecting the debtor's financial condition - his ability to pay - that is not actionable under the text of the statute.  Even if there were an actionable misrepresentation, it was a statement about a future event and an omission, triggering an even higher bar to prosecution.  Even if there were a statement that could clear this high bar, there is no evidence of reliance much less justifiable reliance; absolutely no steps were taken to shore up a bare belief.  Finally, even if there were somehow proof of everything else, Appling paid more to Lamar after the alleged misrepresentations occurred that Lamar billed.  There are no damages as a matter of law.  This Court should reverse the decision of the Bankruptcy Court and enter a judgment in favor of Appling discharging the debt owed to Lamar.

Respectfully submitted this 27th day of May, 2015.

*/s/ Daniel L. Wilder*
Daniel L. Wilder
State Bar No. 141448
Attorney for Appellant
R. Scott Appling

EMMETT L. GOODMAN, JR. LLC
544 Mulberry Street, Suite 800
Macon, Georgia 31201
Telephone:  (478) 745-5415
Facsimile:  (478) 746-8655

CERTIFICATE OF SERVICE

I, hereby certify that, on May 27, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Mr. David W. Davenport, 50 Hurt Plaza, Suite 900, Atlanta, GA 30303-2933, and I hereby certify that I have mailed by United States Postal Service the document and a copy of the Notice of Electronic Filing to the following non-CM/CEF participants: n/a.

Respectfully submitted this 27th day of May, 2015.

/s/ Daniel L. Wilder
Attorney for Appellant
State Bar No. 141448
544 Mulberry Street
Suite 800
Macon, Georgia 31201
Telephone:  (478) 745-5415
Facsimile:  (478) 746-8655
E-mail: dwilder@goodmanlaw.org