## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ATHENS DIVISION

R. SCOTT APPLING,                      :
                                       :
              Appellant,               :
                                       :
v.                                     :        3:15-CV-031 (CAR)
                                       :
                                       :
LAMAR, ARCHER & COFRIN, LLP,           :
                                       :
              Appellee.                :
_____ :

## ORDER ON APPEAL

Before the Court is an appeal from the decision of the United States Bankruptcy Court for the Middle District of Georgia, Athens Division. On appeal, Appellant-Debtor R. Scott Appling contends the Bankruptcy Court erred in concluding that the $104,179.60 owed to Appellant Lamar, Archer & Cofrin, LLP, is nondischargeable in bankruptcy under 11 U.S.C. § 523(a)(2)(A). This Court has considered the record, the briefs filed by both parties, and the relevant case law. For the reasons discussed below, the decision of the Bankruptcy Court is hereby **AFFIRMED**.

## LEGAL STANDARD

The Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a).  In reviewing the decision of a bankruptcy court, a district court functions as an appellate

court.[1]  The Court must accept the Bankruptcy Court's findings of fact, unless those facts are clearly erroneous.[2]  The Court may not make independent factual findings.[3]  Conclusions of law, however, including the Bankruptcy Court's interpretation and application of the United States Bankruptcy Code, are reviewed *de novo*.[4]  Thus, this Court owes no deference to the Bankruptcy Court's interpretation of the law or its application of the law to the facts.[5]

## BACKGROUND

In 2004, Appellant Appling purchased a business that manufactured seating components. Appellant subsequently learned he had been defrauded in the purchase based on a misrepresentation of the business's financial condition. He hired Appellee Lamar, Archer & Cofrin, LLP to represent him as counsel. They worked for Appellant on an hourly basis with fees due monthly. Appellant also hired Walter Gordon as local counsel. Representing Appellant, Appellee filed suit against the seller and broker of the business in the Superior Court of Franklin County, Georgia.

By March 16, 2005, Appellant owed Appellee $60,819.97 in unpaid legal fees. Additionally, he owed Gordon around $18,000 in legal fees. Appellant emailed

---

[1] *See Williams v. EMC Mortg. Corp. (In re Williams)*, 216 F.3d 1295, 1296 (11th Cir. 2000) (per curiam).

[2] *Id.*

[3] *Equitable Life Assurance Soc'y v. Sublett (In re Sublett)*, 895 F.2d 1381, 1384 (11th Cir. 1990).

[4] *See Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.)*, 904 F.2d 588, 593 (11th Cir. 1990).

[5] *Goerg v. Parungao (In re Goerg)*, 930 F.2d 1563, 1566 (11th Cir. 1991).

Appellee complaining about the status and expenses of the litigation. In response, partner Robert Lamar notified Appellant that failure to bring fees current would cause Appellee to terminate its representation and place an attorney's lien on Appellant's file.[6]

On March 18, Appellant, Appellee, and Gordon met in Gordon's office. Appellee contends at the meeting Appellant stated his accountant, Mike Strickland, had completed his amended tax return, and Appellant would receive a tax refund of $104,000 to $105,000. Because this amount would be sufficient to bring the account current and pay future fees, and because Appellant stated he would use the money for this purpose, Appellee agreed to continue the representation.[7] At trial, the Bankruptcy Court found Appellant did not represent at the March meeting that his accountant had already prepared the tax return. However, the Bankruptcy court did find Appellant represented that he would receive a tax refund of approximately $100,000.

On June 15, Appellant and his wife signed the amended tax return for the year 2002; however, this return only requested a refund of $60,718. On October 6, the I.R.S. informed Appellant he and his wife would receive a refund of $59,851. Within two weeks of receiving the letter from the I.R.S., Appellant and his wife obtained a refund of $59,851. However, Appellant did not use the refund to pay his attorneys.

On November 2, 2005, Appellant and his wife met Appellee in its office for the second time to discuss the unpaid legal fees and status of Appellee's representation.

_____

[6] [Doc. 3] at 43.
[7] *Id*. at 17.

Appellant contends he informed Appellee he planned to use the tax refund to keep his floundering business afloat instead of paying Appellee. However, the Bankruptcy Court found Appellant represented to Appellee he had not yet received his refund, and he would use his refund to pay the outstanding legal fees.[8]

In June 2006, a few months after the underlying litigation settled, Appellee learned Appellant had received the refund and used it to prop up his business, not to pay Appellee. In a letter dated June 26, Appellee demanded payment of the outstanding legal fees within fourteen days. On July 19, Appellant responded that after the November 2 meeting, his bankruptcy attorney suggested using the tax refund to help his business instead of paying Appellee, and told Appellee, "[i]t should be obvious as to what I chose to do since we are still open."[9]

In October 2012, after not receiving payment, Appellee sued Appellant in the Superior Court of Hart County, Georgia, and obtained a judgment for $104,179.60. In January 2013, Appellant and his wife filed a petition under Chapter 7 of the Bankruptcy Code. In an adversary proceeding, Appellee sought to have its claim against Appellant rendered nondischargeable under 11 U.S.C. § 523(a)(2)(A). The Bankruptcy Court concluded on March 10, 2015 that Appellant's debt is nondischargeable, and this appeal followed.

---

[8] *Id*. at 68-69; *see also* [Doc. 1-2] at 14.

[9] [Doc. 3] at 73.

## ISSUES ON APPEAL

A.  Whether the Bankruptcy Court erred in ruling Appellant's alleged representation was not an "oral statement respecting the debtor's financial condition" under 11 U.S.C. § 523(a)(2)(A).

B.  Whether the Bankruptcy Court erred in determining Appellee has a nondischargeable claim against Appellant.

C.  Whether the Bankruptcy Court erred in failing to apply the heightened standards required under 11 U.S.C. § 523(a)(2)(A) and relevant case law for statements concerning future acts and omissions.

D.  Whether the Bankruptcy Court erred in determining Appellee proved reliance, much less justifiable reliance, on any representation of Appellant.

E.  Whether the Bankruptcy Court erred in determining damages as being the whole amount of Appellee's claim rather than measuring damages based on the alleged misrepresentation itself.

## DISCUSSION

### I. Statement Respecting Debtor's Financial Condition

Chapter 7 of the Bankruptcy Code provides for the discharge of certain debts incurred by a debtor, allowing the debtor to obtain a fresh start.[10] However, there are

---

[10] *Bandi v. Becnel (In re Bandi)*, 683 F.3d 671, 674 (2012) (citing 11 U.S.C. § 727).

exceptions to discharge, some of which are intended to protect victims of fraud.[11] This appeal's threshold issue centers around the Bankruptcy Court's interpretation of one of those exceptions, 11 U.S.C. § 523(a)(2)(A).[12]

Pursuant to § 523(a)(2)(A), a debt "for money, property, services, or an extension, renewal, or refinancing of credit" is nondischargeable "to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." Additionally, a false oral statement is sufficient to render a debt nondischargeable under § 523(a)(2)(A).[13] Therefore, under § 523(a)(2)(A), for a false oral statement to be nondischargeable it must not be a statement "respecting the debtor's … financial condition."[14]

Courts disagree whether to construe the phrase "respecting the debtor's . . . financial condition" broadly or strictly.[15] According to the broad interpretation, "any communication that has a bearing on the debtor's financial position," even if it only pertains to a single asset, qualifies as a statement respecting the debtor's financial

---

[11] *Id.* (citing 11 U.S.C. § 523).

[12] The sister exception to §523 (a)(2)(A) is § 523(a)(2)(B), which covers a debtor's false "written statement" of her financial condition. *See Generac Power Systems, Inc., v. William A. Dato* (*In re Dato*), 410 B.R. 106, 110 (Bankr. S.D. Fla. 2009).

[13] *Ershowsky v. Freedman (In re Freedman)*, 427 F. App'x. 813, 818 (11th Cir. 2011) (per curiam). *See also Butler v. Roberts (In re Roberts)*, 54 B.R. 765, 770 (Bankr. D. N.D. 1985) (noting that subsection "(a)(2)(A) includes any acts or statements including those made orally but *excludes* oral statements respecting the debtor's financial condition") (emphasis in original).

[14] *See Supra* note 13.

[15] *Prim Capital Corp. v. May (In re May)*, 368 B.R. 85, 2007 WL 2052185, at *6 (6th Cir. BAP July 19, 2007) (unpublished decision).

condition.[16] Under this interpretation, statements involving "conditions to purchase of an asset, ownership of particular property, indebtedness to a creditor and encumbrances on assets" qualify as statements respecting the debtor's financial condition.[17] In contrast, the strict interpretation limits a statement respecting the debtor's financial condition to "financial-type statements including balance sheets, income statements, statements of changes in financial position, or income and debt statements that provide what may be described as the debtor['s] . . . net worth, overall financial health, or equation of assets and liabilities."[18]

This case turns on whether the Bankruptcy Court properly interpreted the phrase "a statement respecting a debtor's financial condition." Although historically a majority of courts followed the broad interpretation,[19] in recent years, the majority of courts have adopted the strict interpretation.[20] The Eleventh Circuit, however, has yet to address

---

[16] *Id.*

[17] *Skull Valley Band of Goshute Indians v. Chivers (In re Chivers)*, 275 B.R. 606, 614 (Bankr. D. Ut. 2002).

[18] *Id.* at 615.

[19] *Id.* at 615. *See also Engler v. Van Steinburg (In re Steinburg)*, 744 F.2d 1060 (4th Cir. 1984); *Conn. Nat'l Bank v. Panaia (In re Panaia)*, 61 B.R. 959 (Bankr. D. Mass. 1986); *King v. Prestridge (In re Prestridge)*, 45 B.R. 681 (Bankr. W.D. Tenn. 1985).

[20] *In re Chivers*, 275 B.R. at 615. *See also Jokay Co. v. Mercado (In re Mercado)*, 144 B.R. 879, 881-86 (Bankr. C.D. Cal. 1992); *Weiss v. Alicea (In re Alicea)*, 230 B.R. 492, 503 (Bankr. S.D. N.Y. 1999) (holding that "[t]he arguments supporting the strict view are more persuasive" because "[t]hey are consistent with ordinary usage and faithful to the intent of Congress as reflected in the statements of the sponsors" and "better reflect[] the limited purpose that subdivision (B) was intended to serve"); *Gehlhausen et al. v. Olinger (In re Olinger)*, 160 B.R. 1004, 1009 (Bankr. S.D. Ind. 1993) (holding that "[t]he ordinary usage of 'statement' in connection with 'financial condition' denotes either a representation of a person's overall 'net worth' or a person's overall ability to generate income"); *Bal-Ross Grocers, Inc., v. Sansoucy (In re Sanscoucy)*; 136 B.R. 20, 23

this issue. Although the Fourth Circuit[21] follows the broad interpretation, the Fifth,[22] Eighth,[23] and Tenth Circuits[24] have adopted the strict interpretation. Finding the reasoning of the Fifth Circuit persuasive, this Court finds that the Bankruptcy Court rightly adopted the strict interpretation of § 523(a)(2)(A).[25]

As the Fifth Circuit has noted, other provisions of the Bankruptcy Code to construe the phrase "financial condition" "to connote the overall net worth of an entity or individual."[26] Indeed, the Supreme Court has interpreted a statement of financial condition as equivalent to a statement about the debtor's "bank balance."[27] Other courts, like the fifth Circuit, have adopted the strict interpretation of "financial condition" and

---

(Bankr. D. N.H. 1992) (holding that "financial condition" refers to "a balance sheet and/or profit and loss statement or other accounting of an entity's overall financial health and not a mere statement as to a single asset or liability").

[21] *In re Van Steinburg*, 744 F.2d at 1060-61.

[22] *In re Bandi*, 683 F.3d at 676 (holding that "financial condition" means "the general overall financial condition of an entity or individual, that is, the overall value of property and income as compared to debt and liabilities").

[23] *Rose v. Lauer (In re Lauer)*, 371 F.3d 406, 413 (8th Cir. 2004). Although the Eighth Circuit did not explicitly endorse the strict interpretation, the Fifth Circuit notes that the Eighth Circuit's reasoning is consistent with the strict interpretation.

[24] *Cadwell v. Joelson (In re Joelson)*, 427 F.3d 700, 706-07 (10th Cir. 2005).

[25] *Lamar, Archer & Cofrin v. Appling (In re Appling)*, 500 B.R. 246, 251 (Bankr. M.D. Ga. 2013).

[26] *Bandi v. Becnel (In re Bandi)*, 683 F.3d 671, 676-77 (5th Cir. 2012) (citing 11 U.S.C. § 101(32)(A)-(C)).

[27] *Id.* at 675 n.16 (quoting *Field v. Mans*, 516 U.S. 59, 76 (1995)). In *Field*, the Court repeatedly refers to "false financial statements," undermining the argument that Congress had not intended to limit § 523(a)(2)(B) to false financial statements, which previously had been "the strongest argument in favor of the broad interpretation." *In re Chivers*, 275 B.R. at 615 (citing *Field*, 516 U.S. at 76-77).

argue that it better comports with normal commercial usage,[28] the Bankruptcy Code's legislative history,[29] a harmonious reading of the Code,[30] and the purpose of § 523(a)(2)(B).[31] This Court concurs. Accordingly, statements respecting the debtor's financial condition involve the debtor's net worth, overall financial health, or equation of assets and liabilities. A statement pertaining to a single asset is not a statement of financial condition.

On appeal, Appellant argues this Court should follow the broad interpretation in accordance with *Bancorpsouth Bank v. Callaway (In re Callaway)*[32] and *Baker v. Sharpe (In re Sharpe).*[33] However, even the court in *Callaway* acknowledged that "a strict approach is preferable to an overly broad approach" to the meaning of the term "financial condition."[34] More importantly, the court in *Callaway* relied on the Bankruptcy

---

[28] *Chivers,* 275 B.R. at 614-16 (quoting *Mercado,* 144 B.R. at 885) (noting the argument that "the normal commercial meaning and usage" of a statement of financial condition indicates either a representation of net worth or overall ability to generate income).

[29] *Id.* at 615 (citing *In re Alicea,* 230 B.R. at 501-05 (noting the argument that the legislative history refers to "false financial statement[s]").

[30] *Id.* (citing *In re Sansoucy,* 136 B.R. at 23) (noting the argument that "narrowing the definition of financial condition in § 523(a)(2)(B) necessarily expands those statements, both written and oral, that do not relate to financial condition that fall within § 523(a)(2)(A) and better harmonizes the statute").

[31] *Id.* (citing *Field,* 516 U.S. at 76-77) (noting the argument that Congress designed § 523(a)(2)(B) to protect debtors from abusive lending practices). The Supreme Court's "recitation of the history of § 523(a)(2)(B) and its goal of preventing abuse by consumer finance companies . . . lends strong support for adoption of the strict interpretation." *Id.*

[32] 2006 WL 6589022 (Bankr. N.D. Ga. Nov. 28, 2006).

[33] 351 B.R. 409 (Bankr. N.D. Tex. 2006).

[34] *Callaway,* 2006 WL 6589022, at *21.

Appellate Panel's holding in *Cadwell v. Joelson (In re Joelson)*,[35] which the Tenth Circuit later reversed.[36] Likewise, the Fifth Circuit's decision in *Bandi v. Becnel (In re Bandi)*[37] abrogated the holding of *Sharpe* on this issue.[38] Therefore, the Court finds neither case pervasive.

In the present case, the alleged misrepresentations consisted of two oral statements by Appellant. Therefore, to establish the debt's nondischargeability, Appellee needed to show that Appellant's statements did not involve Appellant's financial condition. Here, the Bankruptcy Court took the strict approach to the phrase "respecting the debtor's . . . financial condition," and found Appellant's statements about his tax refund involved a single asset rather than Appellant's net worth, overall financial health, or equation of assets and liabilities, therefore, making it subject to § 523(a)(2)(A).[39] Because the statements did not concern Appellant's financial condition, this Court finds the Bankruptcy Court did not err in holding Appellee stated a claim under § 523(a)(2)(A).

## II. Nondischargeability

---

[35] 307 B.R. 689 (10th Cir. 2004).

[36] *In re Joelson*, 427 F.3d at 715 (holding that "a statement about one of [the debtor's] assets is not a statement" that respects the debtor's financial condition and that "a statement about one part of [the debtor's] income flow . . . does not reflect [the debtor's] overall financial health" and, therefore, does not respect the debtor's financial condition).

[37] *In re Bandi*, 683 F.3d at 676.

[38] *Id.*

[39] *In re Appling*, 500 B.R. at 251.

Under § 523(a)(2)(A), a debtor who makes a false statement not involving financial condition does not receive a discharge "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud. . . ."[40] To establish an exception to discharge under this section, the creditor must show that "the debtor made a false statement with the purpose and intention of deceiving the creditor; the creditor relied on such false statement; the creditor's reliance on the false statement was justifiably founded; and the creditor sustained damage as a result of the false statement."[41] An objecting creditor must prove each element by a preponderance of the evidence.[42] However, the "courts generally construe the statutory exceptions to discharge 'liberally in favor of the debtor.'"[43]

## A. False Statement with Intent to Deceive

To establish the first element of § 523(a)(2)(A), the creditor must show "that the debtor made a 'false representation' . . . with the intent to deceive the creditor."[44] The debtor's "statement of intent to perform an act in the future will not generally form the basis of a false representation that is actionable under section 523(a)(2)(A) unless the creditor can establish that the debtor lacked the subject intent to perform the act at the

[40] 11 U.S.C. § 523(a)(2)(A).

[41] *Johannessen et al. v. Johannessen (In re Johannessen)*, 76 F.3d 347, 350 (11th Cir. 1996).

[42] *Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301, 304 (11th Cir. 1994) (citing *Grogan v. Garner*, 498 U.S. 279, 291 (1991)).

[43] *Id.* (citing *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987)).

[44] *Duncan v. Bucciarelli (In re Bucciarelli)*, 429 B.R. 372, 375 (Bankr. N.D. Ga. 2010).

time the statement was made."[45]Accordingly, the finder of fact must determine whether

the debtor "in good faith . . . intended to keep his promise."[46] While an honest but

unreasonable belief in the truth of the representation does not by itself establish deceit,

"the very unreasonableness of such a belief may be strong *evidence* that it does not in

fact exist."[47] Moreover, the court may infer intent to deceive from the debtor's reckless

disregard for the veracity of a statement.[48]

Because debtors generally do not admit they made a promise with the intent to

deceive the creditor or without the intent to perform, the court may "infer such

fraudulent intent from the facts and circumstances of the case."[49] The debtor's

fraudulent intent constitutes an issue of fact and, therefore, this Court must review the

Bankruptcy Court's determination under the "clearly erroneous" standard.[50] Because a

determination of intent "depends largely upon an assessment of the credibility and

demeanor of the debtor, deference to the Bankruptcy Court's factual findings is

particularly appropriate."[51]

Here, Appellant first argues the Bankruptcy Court erred in finding Appellant

made a false representation. Appellant points to his testimony, as well as Gordon's

---

[45] *Id.* (citing *Allison v. Roberts* (*In re Allison*), 960 F.2d 481 (5th Cir. 1992)).
[46] *Palmacci v. Umpierrez*, 121 F.3d 781, 788 (1st Cir. 1997).
[47] *Id.* (emphasis in original).
[48] *In re Miller*, 39 F.3d at 305.
[49] *In re Bucciarelli*, 429 B.R. at 375-76 (Bankr. N.D. Ga. 2010).
[50] *Barnett v. Osbourne* (*In re Osborne*), 455 B.R. 247, 252 (Bankr. M.D. Fla. 2010).
[51] *Williamson v. Fireman's Fund Insurance Co.*, 828 F.2d 249, 252 (4th Cir. 1987).

testimony, that he never stated a set amount for the expected tax refund in the March 2005 meeting. However, Lamar testified to the contrary, stating that Appellant said he "had met with his accountant and that they had already prepared the tax return for [sic], and he . . . was going to get a substantial refund, he represented in excess of $100,000" that he would use to pay the existing debt and future fees and expenses.[52] Because the Bankruptcy Court's finding of fact was supported by Lamar's testimony, this Court cannot say based on contradictory testimony it was clearly erroneous.[53]

Next, Appellant challenges the Bankruptcy Court's factual finding Appellant intended to deceive Appellee when he stated the refund would be approximately $100,000. The Bankruptcy Court made this finding after multiplying Appellant's income in 2002 and 2003 by a 28 percent tax rate.[54] Because Appellant related two different versions, the Bankruptcy Court found that the total amount of taxes paid was either $87,640 or $84,990.[55] In either case, the Bankruptcy Court found it implausible that Appellant's accountant would have told Appellant that his potential tax refund would

---

[52] [Doc. 3] at 216.
[53] *United States v. Copeland*, 20 F.3d 412, 413 (11th Cir. 1994) (noting that the appellate court "will not ordinarily review the factfinder's determination of credibility"); *see also Palmacci,* 121 F.3d at 785 (noting "[p]articular deference" is due to the bankruptcy court's "findings that depend on the credibility of other witnesses and on the weight to be accorded to such testimony").
[54] [Doc. 1-2] at 10-11.
[55] *Id.*

have been over $100,000. Therefore, the Bankruptcy Court concluded that Appellant did not honestly believe he would receive a refund of over $100,000.[56]

On appeal, Appellant asserts the Bankruptcy Court speculated about what the accountant would have said about prevailing tax rates and argues the Bankruptcy Court's assumptions about tax rates do not constitute evidence. However, we conclude the Bankruptcy Court did not err. Appellant testified his accountant calculated his expected tax refund using a 28 percent interest rate; therefore, the Bankruptcy Court based its findings on the evidence of Appellant's own testimony rather than speculations or assumptions.[57]

Appellant also challenges the Bankruptcy Court's factual finding that he made a misrepresentation at the November 2005 meeting. In making its finding, the Bankruptcy Court relied on Lamar's testimony that Appellant falsely stated he had not yet received the refund check. Similar to his arguments regarding the March meeting, Appellant proffers his testimony as well as his wife's, which contradicted Lamar's testimony. Additionally, he contends the Bankruptcy Court violated Federal Rule of Evidence 1003 when it based its finding of a misrepresentation on its "suspicions" about Appellant's introduction of a copy of his wife's notes from the March meeting, rather than submitting the original notes.[58] Appellant further contends the Bankruptcy Court erred

---

[56] *Id*.
[57] [Doc. 3] at 305.
[58] [Doc. 1-2] at 14.

in finding fault with Appellant's submission of the copy of the notes rather than the original because Appellee failed to object to the admission of the copy. This Court finds Appellant's arguments unpersuasive.

Rule 1003 concerns the admissibility of a copy of an original document.[59] The credibility to be accorded the duplicate remains a question of fact.[60] Acting as finder of fact, the Bankruptcy Court found the admission of the copy rather than the original raised suspicions. Because the Bankruptcy Court's finding involved the credibility or weight to be given the document, it did not violate Rule 1003.

Moreover, even if the Bankruptcy Court's suspicions about the notes violated Rule 1003, these suspicions did not constitute the Bankruptcy Court's sole basis for its findings. The Bankruptcy Court explicitly based its findings on the demeanor of the witnesses, the conflicting testimony given by Appellant and his wife, and Appellant's failure to remind Lamar of his supposed November statements in the letter sent to Lamar in July 2006.[61] Consequently, this Court cannot say the Bankruptcy Court committed clear error by crediting the testimony of one witness over that of others.

---

[59] Fed. R. Evid. 1003. The Rule provides that "[a] duplicate is *admissible* to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate" (emphasis added).

[60] *Hill v. City of Houston*, 235 F.3d 1339 (Table), 2000 WL 1672663, *7 (5th Cir. 2000) (noting that "under either rule [1003 or 1008], the question of whether [the document] is a fake or rather an authentic copy, [is] a fact question which [is] properly submitted to the jury") (unpublished opinion).

[61] [Doc. 1-2] at 14.

Finally, Appellant contends the Bankruptcy Court erred by failing to "apply the heightened standards required under 11 U.S.C. § 523(a)(2)(A) and relevant case law for statements concerning future acts and omissions."[62] In other words, Appellant argues the Bankruptcy Court improperly found Appellant actually intended to deceive Appellee in making his statement in March 2005 regarding the amount of his expected tax refund.

To constitute fraud under § 523(a)(2)(A), a false statement concerning a future act or omission requires "actual intent to mislead, which is more than mere negligence."[63] However, a court may infer actual intent to deceive from the debtor's reckless disregard for the truth of the representation.[64] The debtor's knowledge that he cannot pay constitutes a circumstance from which the court may infer intent to deceive.[65]

According to Appellant, his statement in March 2005 as to the amount of his expected tax return involved a future act and was an earnestly held belief, thereby precluding a finding of fraud absent actual intent not to perform. In support of his contention that he merely held an "overly optimistic" belief that his tax return would amount to approximately $100,000,[66] Appellant cites *In re Hill*.[67] In *Hill*, the bankruptcy court found that no fraudulent misrepresentation occurred where the debtor claimed he

---

[62] [Doc. 9] at 17.
[63] *Palmacci*, 121 F.3d at 788.
[64] *Id.* at 788-89 (citing *Ins. Co. of N. Am. v. Cohn (In re Cohn)*, 54 F.3d 1108, 1118-19 (3d Cir. 1995)).
[65] *Id.* at 789.
[66] [Doc. 12] at 3.
[67] 425 B.R. 766 (Bankr. W.D. N.C. 2010).

would pay legal fees by refinancing his house, even though he was completing a credit counseling course as a prerequisite to filing in bankruptcy. However, unlike the present case, the court in *Hill* found that although the debtor's belief that he would be able to pay the legal fees was "unrealistic, [the debtor's] intention appear[ed] earnestly held."[68]

Here, the Bankruptcy Court inferred Appellant's intent to deceive based on the impossibility of Appellant's representation that his income multiplied by his stated tax rate could produce a tax refund of approximately $100,000 and found Appellant's belief was not earnestly held—in other words, Appellant intended to deceive Appellee. Because this Court must give great deference to the Bankruptcy Court's factual findings regarding intent,[69] we conclude the mathematical unreasonableness of Appellant's alleged belief constitutes sufficient evidence the belief was *not* earnestly held.[70] Therefore, the Bankruptcy Court did not commit clear error by finding Appellant knowingly misrepresented the amount of the tax refund.

Moreover, even if the Bankruptcy Court had improperly found Appellant actually intended to deceive Appellee in the March 2005 statement, its conclusion is not error because Appellant's November 2005 statement did not involve a future act or

---

[68] *Id*. at 776.

[69] *Williams v. Fireman's Fund Insurance Co.*, 828 F.2d at 252.

[70] Appellant further argues that the United States Supreme Court's holding in *Bullock v. Bankchampaign, N.A.*, 133 S. Ct. 1754 (2013), effectively abrogates a creditor's ability to establish intent to deceive based on reckless disregard. However, *Bullock* involved the scienter requirement for defalcation under 11 U.S.C. § 523(a)(4) and has no application here. Moreover, to the extent Appellant raises an equitable argument based on the totality of the circumstances, this Court is not persuaded that Appellee's allegation of fraud requires strict scrutiny.

intentional omission. At the November meeting, Appellant stated he had not yet received the tax refund, when in fact he had. Because this second misrepresentation involved a past event known at the time by Appellant to be false, Appellant cannot plausibly claim he lacked intent to deceive in making the statement. Consequently, the Bankruptcy Court did not err in finding Appellant made a false statement with intent to deceive.

### B. Justifiable Reliance

Although the text of § 523(a)(2)(A) does not impose a reliance requirement, the United States Supreme Court has held that, in accordance with common law tort principles of fraud, an exception to discharge under this section requires justifiable reliance by the creditor on the debtor's false statement.[71] The justifiable reliance standard "does not mean that [the creditor's] conduct must conform to the standard of the reasonable man."[72] Instead, "[j]ustification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases."[73] Accordingly, the justifiable reliance standard is "less demanding" than the standard of reasonable reliance.[74] Under the justifiable reliance standard, the creditor need only investigate the facts if, "under the circumstances, the facts should be apparent to one of

---

[71] *Field*, 516 U.S. at 69-75.
[72] *Id.* at 70-71 (quoting Restatement (Second) of Torts, § 545A, Comment *b* (1976)).
[73] *Id.* at 71 (quoting Restatement (Second) of Torts, § 545A, Comment *b* (1976)).
[74] *Id.* at 61.

his knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived."[75] Justifiable reliance "requires only that the creditor did not 'blindly [rely] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.'"[76]

Here, Appellant argues the Bankruptcy Court erred in finding Appellee relied, much less justifiably relied, on Appellant's false statement. Appellant contends Appellee could not have relied on Appellant's March 2005 statement that his future tax refund would be sufficient to pay the unpaid fees because Appellee knew of Appellant's poor financial condition. In particular, Appellant points to the facts that Appellee spoke to a bankruptcy attorney about Appellant, asked Appellant's mother to pay the bill at one point, and admitted it knew of Appellant's financial problems arising from the business. Moreover, Appellant contends Appellee's actions after the March 2005 indicate a lack of reliance given that Appellee did not know the IRS would even approve the tax return, did not review the tax return, did not draw up any documents to reflect assignment of the funds from the tax return, and did not write a letter confirming its conversations with Appellant.

Contrary to Appellant's assertions, however, whatever Appellee may have known or suspected about Appellant's financial condition has no bearing on whether

---

[75] *Id*. at 71-72 (quoting W. Prosser, *Law of Torts* § 108, p. 718 (4th ed. 1971)).
[76] *Ojeda v. Goldberg*, 599 F.3d 712, 717 (7th Cir. 2010) (quoting *Field*, 516 U.S. at 71).

Appellee justifiably relied upon Appellant's statement in March 2005 that he would receive a tax refund. Appellant can point to no evidence of deceit with respect to the tax refund that should have been apparent to Appellee upon a "cursory examination."[77] Poor overall financial health does not inherently preclude receipt of a substantial tax refund. Therefore, under the justifiable reliance standard, Appellee had no duty to investigate the matter. That Appellant did, in fact, receive a significant tax refund in the amount of $59,851 only underscores the justifiability of Appellee's reliance, even if the refund was considerably less than Appellant had promised. Moreover, Appellant fails to cite any evidence specific to the November 2005 statement indicating Appellee could not have justifiably relied upon the statement. To the extent Appellant argues that Appellee's knowledge of Appellant's general financial condition precluded justifiable reliance, that argument fails for the same reasons it fails for the March 2005 statement.

At trial, Lamar testified Appellee agreed to continue representing Appellant in reliance on Appellant's false statements about the tax refund. Lamar further testified that had Appellee known the truth, it would have stopped the representation, put an attorney's lien on Appellant's file, and begun collection of unpaid fees. Because Appellant has no evidence that should have alerted Appellee to Appellant's deceit specifically regarding the tax refund, the Bankruptcy Court did not err in determining Appellee established justifiable reliance.

---

[77] *Id.*

## III. Damages

Section 523(a)(2)(A) of the Bankruptcy Code renders nondischargeable certain fraudulently-incurred debts "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud . . . ."[78] Consequently, the statute applies to both "the primary debtor-creditor relationship" and "secondary debt transactions."[79] While the primary debtor-creditor relationship involves provision of money, property, or services, secondary debt transactions include extensions, renewals, and refinancing.[80] A secondary debt transaction constitutes "an autonomous transaction that results in the lengthening of a debtor-creditor relationship" whereby "the creditor grants a reprieve to the debtor."[81] Therefore, an extension of credit represents "an agreed enlargement of time allowed for payment."[82]

Although the Eleventh Circuit has not addressed the issue, several courts have held § 523(a)(2) does not impose a "new money" requirement on claims arising out of secondary debt transactions.[83] In other words, "a false representation in connection with

---

[78] 11 U.S.C. § 523(a)(2)(A).

[79] *Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 131-32 (4th Cir. 1999).

[80] *Id.*

[81] *Id.*

[82] *Id.*

[83] *See Household Fin. Corp. v. Greenidge (In re Greenidge)*, 75 B.R. 245, 247 (Bankr. M.D. Ga. 1987) (holding that "the better view is that a false representation in connection with a renewal or

a renewal or refinancing of credit may render the entire debt nondischargeable" even if the creditor did not lend new money in reliance on the false statement.[84]

Here, Appellant argues the Bankruptcy Court erred in measuring damages by the entire amount of Appellee's claim rather than by the damages arising after Appellant's misrepresentation. Appellant does not seriously dispute the absence of a *per se* "new money" requirement for nondischargeability. Instead, he argues the measure of damages is zero because Appellee extended no new net value after Appellant's false statement in March 2005. In support of this argument, Appellant cites *Household Finance Corp. v. Greenidge (In re Greenidge)*, wherein the Bankruptcy Court held that, even without a "new money" requirement, the refinanced portion of the debt was dischargeable because the creditor failed to establish its reliance as to that portion.[85] In effect, Appellant seeks to import a "new money" requirement into the measure of damages. Under such a rule, a creditor attempting to establish the nondischargeability of a debt would have to prove "how it would have collected the debt, what assets

---

refinancing of credit may render the entire debt nondischargeable"); *Cho Hung Bank v. Kim (In re Kim)*, 62 F.3d 1511 (9th Cir. 1995) (citing *Cho Hung Bank v. Kim (In re Kim)*, 163 B.R. 157, 159 (9th Cir. BAP (Cal.) 1994)) (adopting Bankruptcy Appellate Panel's holding that there is no requirement that "'an extension of credit' be joined by an advance of further funds in order for a creditor to have a claim for relief"); *In re Ojeda*, 599 F.3d at 720 (holding that because creditor forbore from collecting the entire debt due to debtor's fraudulent inducement, the entire debt was nondischargeable); *Wolf v. Campbell (In re Campbell)*, 159 F.3d 963, 966-67 (6th Cir. 1998) (holding that because creditor's forbearance from demanding immediate repayment of the debt was based on the false statement, the entire amount was nondischargeable).
[84] *In re Greenidge*, 75 B.R. at 247.
[85] *Id.*

would have been available then but not later," and the specific "pecuniary loss due to the forbearance from collecting the debt . . . ."[86]

Appellant's reliance on *Greenidge*, however, is inapposite. There, the Bankruptcy Court held the creditor provided insufficient evidence "to prove that it forfeited any remedies or otherwise relied to its detriment on the Debtor's false financial statement in refinancing the earlier debt . . . ."[87] Here, in contrast, the Bankruptcy Court found that once Appellant became delinquent on payments, Appellee forbore from collecting the overdue amounts in reliance on Appellant's false statement. This forbearance constituted an extension of credit. Accordingly, the entire debt is nondischargeable.

Finally, Appellant argues Appellee failed to prove any damages because the debt was uncollectible both before and after Appellant's false statements. However, "[a] creditor need not also show that he could have collected on the loan prior to the bankruptcy but for the new extension of credit" to establish the debt is nondischargeable.[88] A debtor's "incentive to act with integrity should not end once he becomes insolvent," and bankruptcy law should avoid "creat[ing] a perverse incentive for insolvent debtors to lie to creditors to get them to forbear collection" of debts.[89]

---

[86] [Doc. 9] at 25.

[87] *In re Greenidge*, 75 B.R. at 247.

[88] *In re Campbell*, 159 F.3d at 966-67 (citing *Shawmut Bank, N.A., v. Goodrich (In re Goodrich)*, 999 F.2d 22, 25-26 (1st Cir. 1993)).

[89] *Id.*

Consequently, Appellant's insolvency does not preclude Appellee from establishing that the entire debt is nondischargeable.

## CONCLUSION

Having reviewed the applicable law and the arguments of the parties, the Court agrees with the decision of the Bankruptcy Court. Accordingly, it is **HEREBY ORDERED** that the decision of the Bankruptcy Court be **AFFIRMED**.

**SO ORDERED,** this 28th day of March, 2016.

S/ C. Ashley Royal
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT